LINGENFELDER, *Appellant*, v. LESCHEN.

Division Two, March 31, 1896.

134   55
81a 456
134   55
91a 297

1. **Principal and Agent:** AGENT'S WANT OF AUTHORITY: RESPONSIBILITY OF AGENT. One who undertakes to bind another, without authority to do so, thereby renders himself personally responsible, and the fact that he may have acted in the utmost good faith, and honestly believed that he possessed the requisite authority to bind the person for whom he assumed to act, will not relieve him from responsibility.

2. ———: ———: CONTRACT FOR SALE OF LAND: AGENT'S LIABILITY TO PURCHASER. One who, without authority, assumes to act as the agent of another in the sale of land, and who contracts that the title will be conveyed by warranty deed free from all liens and incumbrances, and that if, upon examination, the title proves defective and can not be made good within a specified time, the sale should be void and the earnest money returned, if the purchaser should so elect, can not be held to have himself warranted the title, or to have contracted that the principal for whom he assumed to act, had the title in fee at the time of the making of the contract, but only to have contracted to sell the principal's interest in the land, and that she would make a warranty deed thereto.

3. ———: ———: ———: ———: RATIFICATION. If the principal in such case failed to ratify the contract before the expiration of the time in which the deed was to have been delivered, the agent, because of his want of authority, will be held to respond in damages.

4. ———: ———: RATIFICATION BY PRINCIPAL. The ratification by the principal of an unauthorized contract of an agent, makes the instrument binding on the principal in the same manner as if originally authorized by the latter, where he acted with full knowledge of all the facts, and the agent in such circumstances will not be personally liable, unless his liability is created by the terms of the contract.

5. ———: ——— : ———: AGENT'S LIABILITY. Where a principal, with full knowledge of all the facts, ratified the unauthorized contract of one assuming to act as her agent in the sale of her land, such contract providing for the execution of a warranty deed by the principal and the return of earnest money, if the purchaser should so elect, in case the title should prove to be defective, and could not be made good within a given time, the agent will only be liable to the purchaser, upon the latter's refusal to accept a defective title, for the return of the earnest money and the interest thereon.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Edmond A. B. Garesche* for appellant.

(1) The measure of damages in a suit by a vendee against a vendor, for breach of contract of sale of land, is the difference between the purchase price of the land sold, and its value when, under the terms of the agreement between the parties, the trade should be closed. *Kirkpatrick v. Downing*, 58 Mo. 32. And the question of supposed or real defect in the title of the vendor, or of his good faith, or supposed want of good faith in the transaction, are not to be considered in estimating damages, in the absence of any provision in the contract to that effect. *Hartzell v. Crumb*, 90 Mo. 629; *Hotel Company v. Sauer*, 65 Mo. 279; *Matheny v. Stewart*, 108 Mo. 78; *Hopkins v. Grazebrook*, 6 B. & C. (2) A person who assumes to contract as agent must see to it that his principal is legally bound by his act; for if he does not give a right of action against his principal, he will be himself personally responsible. Story on Agency [9 Ed.], sec. 264; *Lapsey v. McKinstry*, 38 Mo. 245; *Wright v. Baldwin*, 51 Mo. 269; *Shell v. Stephens*, 50 Mo. 375; *Mantz v. Maguire*, 52 Mo. App. 136; *Myers' Tailoring Co. v. Keeley*, 58 Mo. App. 491; *Zeigler v. Fallon*, 28 Mo. App. 298. And

where one falsely holds himself out to another as an agent, he is liable for any loss that happens by reason of his lack of authority. Mechem on Agency [Ed. 1889], sec. 543. As where he represents, either actually or impliedly, that he has authority to act for another, when in fact he has no such authority. *Bush v. Cole*, Cases on Agency (Mechem), 650; *Simmons v. Moore*, Cases on Agency (Mechem), 505; *Kroeger v. Pitcairn*, Cases on Agency (Mechem), 501. And it can make no difference that in so acting he did so in the sincere belief that he had authority, although in fact he had none; he will still be liable to a third party who deals with him in ignorance of his want of authority, if he suffers loss in consequence, upon the ground of an implied warranty of authority. Mechem on Agency [Ed. 1889], sec. 542; *White v. Madison*, 26 N. Y. (12 Smith) 117; *Collen v. Wright*, 7 Ell. and Bla. 301; *Collen v. Wright*, 8 Ell. and Bla. 647. And the rule is the same where, knowing he has no authority, he makes a contract implying its possession. Mechem on Agency [Ed. 1889], sec. 544. (3) And where one represents himself as an agent to sell land when in point of fact he has no authority to bind his alleged principal, the rule of damage includes expense of examining title, expenses of suit against owners for either specific performance or for damages on account of their refusal to convey, and also damages for loss of bargain. 2 Sedgwick on Damages [8 Ed.], sec. 835, and authorities cited; *In re Palace Co.*, 24 Ch. Div. 367; Sutherland, Damages [2 Ed.], sec. 798, and cases cited; *Skaaras v. Finnegan*, 31 Minn. 48. (4) When respondent tendered performance of his principal's contract, he had no title. *First*. Because at that time the trustee had either executed or delivered to him a deed to the land. *Second*. Because the sale under the deed of trust was had upon nineteen days' notice,

when the statute (R. S. 1889, sec. 7093) requires at least twenty days' publication. *Bank v. Stumpf*, 73 Mo. 315. *Third.* Because the sale under the deed of trust was irregular in that it was made at an unusual hour for such sales, and if appellant had accepted its tender and that of the quitclaim deed of the heirs as performance he would, in order to perfect his title, have laid himself liable to the payment of the judgments against the Tiekemeier boys. *Fourth.* Because only one of the trustees had acted, when the conveyance was to two, and no proof was made of the inability or refusal of the other to join in the foreclosure. 1 Perry on Trusts [4 Ed.], sec. 412. (5) The rule declared in the line of authorities relied upon by respondent (*Hammond v. Hannin*, 24 Mich. 374; *Fleareau v. Thornhill*, 2 W. Bl. 1078) is no longer the one upheld in this state. *Hartzell v. Crumb*, 90 Mo. 629. The weight of modern authority greatly preponderates against the enforcement of the rule in *Fleareau v. Thornhill* in its broadest sense. See *Hopkins v. Lea*, 6 Wheat. (19 U. S.) 109; *Lawrence v. Chase*, 54 Me. 196; *Case v. Wolcott*, 33 Ind. 5; *Brigham v. Evans*, 113 Mass. 538; *Harrison v. Charlton*, 37 Iowa, 134; *Camell v. McLean*, 6 Har. & G. (Md.) 297; *Barbur v. Nicholls*, 3 R. I. 187; *Gale v. Dean*, 20 Ill. 320; *Dustin v. Newcomer*, 8 Ohio, 49; *Pumpelly v. Phelps*, 40 N. Y. 59; *Drake v. Baker*, 34 N. J. L. 358.

*Wm. C.* and *Jas. C. Jones* for respondent.

(1) The instruction given by the court was proper because it clearly appears from plaintiff's own evidence that even though Leschen did not have written authority at the time the contract was made, yet subsequently, with full knowledge of all the facts his principal ratified the bargain, and became liable to plain-

tiff to the same extent as though the original authorization had been in writing, and there is no evidence that she ever denied the contract or sought in any way to avoid its obligations, and in an action for specific performance properly conducted could have been required to execute a deed.    Story on Agency, secs. 265, 239, 244, 251; Mechem on Agency, secs. 110, 144, 145, 134, 140; Wharton on Agency, secs. 62 to 76, 85 to 92; *Bank v. Gay*, 63 Mo. 33; *Cravens v. Gillilan*, 63 Mo. 28; *Dow v. Spenny*, 29 Mo. 386; *Chamberlain v. Robertson*, 31 Iowa, 409; *Ballou v. Talbot*, 16 Mass. 460; *Roby v. Cossitt*, 78 Ill. 638; *State v. Torinus*, 26 Minn. 1; *Clark v. Van Riemsdyk*, 9 Cranch. 242; *Chamberlain v. Collinson*, 45 Iowa, 429; *Hawkins v. McGroarty*, 110 Mo. 546; *Roth v. Goerger*, 118 Mo. 556.    (2)    The measure of damages as laid down in the instruction given at defendant's request, was entirely proper in the absence of any authority to plaintiff to bind his principal.    *Gestring v. Fisher*, 46 Mo. App. 603; *Hammond v. Hannin*, 21 Mich. 374, and cases cited; *Matheny v. Stewart*, 108 Mo. 73; *Kirkpatrick v. Downing*, 58 Mo. 32; *Jones v. Sharp*, 7 Mo. 71; *Clark v. Conway*, 23 Mo. 437; *Dickson v. Desire*, 23 Mo. 151; *Tapley v. Le Beaume*, 1 Mo. 393.

BURGESS, J.—Action by plaintiff to recover from defendant $5,009 which he claims to be the difference in value of certain real property in the city of St. Louis, and the price at which it was sold to him by defendant.

At the time of the sale defendant had no written authority from the owners of the property to sell the same, but claims that his acts in so doing were subsequently affirmed and ratified by Mrs. C. Tiekemeier for whom he acted, but who only had a life estate in the property.    The contract between plaintiff and

defendant was entered into on the twenty-fifth day of May, 1892, and is as follows:

"No.        REAL ESTATE OFFICE OF NOONAN ⎫
            INVESTMENT COMPANY, 800  ⎬
            Chestnut St.                ⎭
            "ST. LOUIS, Mo., May 25, 1892.

"Received of Eugene J. Lingenfelder the sum of five hundred dollars, in part payment, for a certain parcel of improved property, lying in the city of St. Louis, state of Missouri, in city block number 538, and having a front of fifty-five feet on the south side of Franklin avenue, by a depth of one hundred and forty-two feet to north line of Gay street, and fronting fifty-five feet on Gay street, and being property formerly owned by Frederick Tiekemeier Estate, on which premises is situated house numbers 1324, 1326 and 1328, Franklin avenue, which property is this day sold to him for the total sum of twenty-one thousand, five hundred and one dollars, sixty-five hundred dollars payable cash, balance in one, two, and three years after, or more cash at option of purchaser, or makes notes due in four, eight, twelve, sixteen, twenty months, or divide said notes in sums to suit purchaser not to exceed thirty-four months, with interest at six per cent per annum, payable semiannually, said deferred payments to be secured by deed of trust on said premises.

"It is agreed by and between the undersigned, that the title to said property will be conveyed by warranty deed, perfect and free from all liens and incumbrances, except as to taxes for the year, one half taxes 1892, and which the undersigned purchaser agrees to pay.

"If upon examination the title proves to be defective and can not be made good within thirty days, the sale shall be null and void and the earnest money returned, if the purchaser so elects, but otherwise the

sale shall stand good, rents and interests to be adjusted to the date of delivery of deeds.

"The said Eugene Lingenfelder, purchaser, is accorded thirty days' time from this date, in which to have the title investigated, and complete this purchase.

(Signed)                "C. TIEKEMEIER.   [SEAL]

"By HENRY LESCHEN, her agent."

At the time of this contract the title in the property was in the heirs of Frederick Tiekemeier, deceased, viz.:   Anna Lovrine, William, Henry, and Metta, subject to the life estate of their mother, Mrs. Tiekemeier, and a deed of trust executed by her and her husband to Albrecht Rasfeldt and William H. Beneke, trustees for Joseph Dormitzer, on the sixteenth of September, 1878, to secure a principal note for $10,000, and interest to accrue, between the date of the deed and maturity of the note, which was five years after its date.

It seems that judgments were rendered in the circuit court of the city of St. Louis, one against Henry F. Tiekemeier in favor of Theodore Bleker for $414, and the other against Henry F., and William H. Tiekemeier, for $819.61.   One of them was rendered on the eleventh day of November, 1889, and the other November 25, 1889.   These judgments were liens on the interest of the judgment debtors in the property, and in order to divest it of the liens the property was sold under the deed of trust by one of the trustees named in the deed of trust, to wit, Albrecht Rasfeldt, at which sale defendant Leschen became the purchaser. Beneke, the other trustee, did not join in this sale but it appears by the provisions of the deed of trust either one or both of the trustees were empowered to sell and convey.   In addition, the sale was advertised for only nineteen days, and the property, instead of being sold at 12 o'clock, as is customary in such matters, was sold

at half past 10 or a quarter before 11, and was purchased by Leschen.

Subsequently, and before he had obtained a deed from the trustee, defendant tendered a deed to plaintiff, when the latter suggested that in order to overcome the possibility of an attack upon the title by either Mrs. Tiekemeier's children, or the judgment creditors of Henry F. and William H. Tiekemeier, and to perfect the same, quitclaim deeds should be obtained from them and the judgments should be satisfied. The quitclaim deeds were obtained, but defendant refused to discharge the indebtedness of $1,233.61 against the Tiekemeier boys saying that if plaintiff would not take the conveyance offered, he would not get anything.

This suit is prosecuted upon the theory that defendant having undertaken to represent Mrs. Tiekemeier, and not having bound her by the contract with plaintiff, because of the lack of authority to so do, he should now be bound to respond for the full measure of damage which plaintiff might have recovered against his alleged principal had she been bound by the terms of the contract which defendant made for her.

The evidence showed that between the date of the sale to plaintiff, and the time when under the contract he was entitled to a conveyance, the property had increased in value from $21,501 to $25,000; and it was also in evidence that one of the witnesses, Mr. Noonan, had been authorized to offer the plaintiff $1,999 for his bargain only a few days after the contract was signed.

It is admitted by counsel for defendant in their brief that the title of Mrs. Tiekemeier was defective.

At the close of plaintiff's evidence the court at the request of defendant declared the law to be as follows:

"The court declares the law to be that under the evidence the plaintiff can not recover a greater amount

than $500 of earnest money paid by him, and interest thereon.''

Judgment was rendered in favor of plaintiff for the sum of $517.75, and after an unsuccessful motion to set the finding aside and for a new trial, plaintiff appealed.

There is perhaps no principle of law better established than that where an agent undertakes to bind a principal when he has no power to do so, he thereby renders himself personally responsible, and the fact that he in so doing may have acted in the utmost good faith and honestly believed that he had such power, makes no difference. *Smout v. Ilbery*, 10 M. & W. 1; *Wright v. Baldwin*, 51 Mo. 269; *Gestring v. Fisher*, 46 Mo. App. 603.

The case last cited was an action for damages against the defendants who had without authority sold plaintiff a lot in the city of St. Louis, and by a written contract executed in the name of Bridge (the supposed owner of the property) by Fisher & Company, agents, promised to made a perfect title. ROMBAUER, P. J., in speaking for the court, said: ''But a contract of a real estate agent in selling property intrusted to him for that purpose is peculiar. In absence of an express agreement to the contrary, he does not undertake to bind all claimants of the title, nor that he will sell an unincumbered fee simple title, but only that he will sell such title as his principal has. Whether the sale is finally consummated depends, generally, upon the further question whether his principal has a perfect title, or, if not, whether the vendee is satisfied with an imperfect title. The agent, by his agreement to negotiate a sale, assumes no obligation in reference to the title, unless it was made a part of his duty to have the title examined before attempting to affect [effect] a sale * * * or unless he warrants the title to the vendee.''

We do not understand that defendant by the terms of the contract now under consideration undertook to warrant the title to be in Mrs. Tiekemeier, but that the extent of his undertaking was that *she* would do so. This seems clear from the provision in the contract by which it is agreed by and between the parties thereto that the title to the property will be conveyed by warranty and perfect and free from all liens and incumbrances. There is nothing in the contract which can be fairly construed as a promise or agreement on the part of defendant to warrant the title, or that Mrs. Tiekemeier had the title in fee at the time the contract was entered into. He only contracted to sell for her her interest in the land, that she would make a warranty deed thereto, and as in doing this he acted without authority from her, he should be held to respond in damages to the purchaser, unless the contract was subsequently, and before the expiration of the time within which the deed was to be delivered, ratified by her.

In Story on Agency, section 251, it is said: "Where a contract, which has been originally made by an agent without authority, is afterward ratified by the principal, that ratification will, in general, relieve the agent from all responsibility on the contract, if it purports to be executed by him merely as an agent, although without such ratification he would be liable to the other contracting party for his misrepresentation or mistake of authority. Thus, if a person should in his own name, but in the character of agent of the owner, sign a written agreement for the sale of an estate, without any authority from the owner, and the latter should afterward sign the same agreement, and declare thereon that he sanctioned and approved of the agent's having signed it in his behalf, the agent will no longer be personally liable on the contract; but his

principal only will be liable, even although the agent, without such ratification, might have been liable thereon." *Roby v. Cossitt*, 78 Ill. 638.

The ratification makes the instrument binding on the principal to all intents and purposes as if originally authorized by him, and the agent will not, under such circumstances, be personally liable unless his personal liability is created by the instrument. *Bray v. Gunn*, 53 Ga. 144.

While the authorities are somewhat in conflict as to whether or not the act of a person who assumes to represent as agent without authority from the person in whose name the act is done may be subsequently ratified by such person, the decided weight is that it may be, when done with a full knowledge of all the facts, and the evidence of such knowledge is clear. *Bank v. Gay*, 63 Mo. 33, and authorities cited; *Bless v. Jenkins*, 129 Mo. 647.

Mrs. Tiekemeier, with a full knowledge of all the facts and circumstances attending the execution of the contract, seems to have done everything that was necessary to ratify the same and make it her contract. She not only procured a foreclosure of the deed of trust given by her deceased husband, and tendered to plaintiff a deed to the property from the purchaser at such sale, but she procured from the heirs of her husband quitclaim deeds at the request of plaintiff, and, together with a deed of general warranty executed by herself, tendered them to plaintiff, and thus by unequivocal acts ratified the contract of sale made by defendant. It is true that defendant had not obtained a deed for the property under the trustee's sale, but that fact did not in any way affect the ratification of the contract of sale by her.

Mrs. Tiekemeier being unable to pass the title in fee to the property, and plaintiff having declined to

accept such title as she could convey, he was only entitled to recover from defendant the amount paid by him as earnest money and interest thereon, and the court correctly so ruled. *Gestring v. Fisher, supra.* We accordingly affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.