Marie WRIGHT and Adelbert Wright, Plaintiffs-Respondents,

v.

Ethel M. MARTIN, Defendant-Appellant.

No. 13404.

Missouri Court of Appeals, Southern District, Division Two.

July 9, 1984.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied July 31, 1984.

Application to Transfer Denied Sept. 11, 1984.

---

Joseph A. Bohrer, Yates, Mauck, Robinett & Bohrer, Inc., Springfield, for plaintiffs-respondents.

Richard D. Crites, Springfield, for defendant-appellant.

## PER CURIAM.

Plaintiffs sought to quiet title to a farm in Greene County claiming that they had record title and actual title and that defendant claimed an interest in the farm "without merit or legal validity".

Defendant answered and counterclaimed in three counts. She contended in Count One that she had title to the property because of adverse possession. In Count Two she contended that she had inherited an undivided one-half interest in the property from her deceased husband. She asserted in Count Three that while he was married to defendant her husband had "allegedly conveyed said real estate" but she had not joined in the deed and it was "in fraud of Defendant's marital rights." In that count she sought "to recover said real estate from Plaintiffs and to apply the same in payment of Defendant's share of the estate" of her deceased husband.

The trial court sustained plaintiffs' motion for judgment on the pleadings as to Count Three and defendant later dismissed Count Two without prejudice. Plaintiffs' claim and Count One of the counterclaim were submitted to a jury.

The jury rendered a verdict in favor of plaintiffs using the verdict form given it regarding plaintiffs' claim. It did not complete the form of verdict given it for Count One of defendant's counterclaim. After the verdict was received the trial judge inquired, "Is there anything further before I discharge the jury?" Counsel for both parties replied, "No." The judge discharged the jury and thereafter entered "judgment in favor of the Plaintiffs and against Defendant, in accordance with the verdict of the jury."

As her first point, defendant asserts that the trial court erred in not requiring the jury to return a verdict upon her counterclaim and by entering a "partial Judgment". She contends that the finding for plaintiffs on their claim did not necessarily carry with it a finding against her counterclaim and therefore there was no final appealable judgment. She says we should remand the case with directions that she receive a new trial upon her counterclaim.

Whether the trial judge should have sent the jury back to complete the verdict form on the counterclaim we do not decide as no request was made that he do so. He gave the parties an opportunity to make that request.

■ The parties agree that in order for a judgment to be final and appealable it must dispose of all parties and issues in the cause and if a counterclaim is pleaded and submitted a finding must be made disposing of the counterclaim. See *Todd v. St. Ann's School Music Service, Inc.*, 585 S.W.2d 522, 524 (Mo.App.1979); *Baumstark v. Jordan*, 540 S.W.2d 611, 612 (Mo. App.1976).

It is likewise agreed that an exception to this general rule occurs when the finding for a plaintiff necessarily carries with it a finding against the defendant on the defendant's counterclaim. See *Reynolds v. Briarwood Development Co.*, 662 S.W.2d 905, 906 (Mo.App.1983); *Todd*, supra, 585 S.W.2d at 524; *Baumstark*, supra, 540 S.W.2d at 612. See also *Moore v. Luna*, 626 S.W.2d 417, 418 (Mo.App.1981).

The question to be resolved here is "if a review of the whole record irresistibly compels the conclusion that the fact finder did consider and determine the issues presented by the counterclaim." *Todd*, supra, 585 S.W.2d at 524–525.

■ We conclude that the jury necessarily considered and denied defendant's counterclaim. The ultimate question presented to the jury was who had actual title to the farm. As the jury determined that plain-

tiffs did, they necessarily had to rule that defendant had not proved her claim of adverse possession.

Defendant contends that the jury may have only determined that plaintiffs had record title and did not consider defendant's claim of adverse possession. That was not what plaintiffs sought in their petition, they sought to quiet title against defendant. Plaintiffs' claim was based upon receiving actual title through valid documents which also showed record title. In defendant's count of her counterclaim which was submitted to the jury, she claimed title only through adverse possession. The jury verdict for plaintiffs establishes that the jurors found actual title in plaintiffs. If the jury was misled or confused as to what they were to do and decide regarding plaintiffs' claim that would have to have been caused by instructional or other error not pointed out to us.

Plaintiffs' submission instruction, Instruction Number 5, told the jury to find for plaintiffs if the jury believed certain matters "Unless you believe that plaintiffs are not entitled to recover by reason of Instruction Number 6." Instruction Number 5 is set out below.[1] Instruction Number 6 was tendered by defendant as both an affirmative defense and counterclaim submission instruction. It is set out below.[2] If there was any doubt that the jury had to consider whether the counterclaim was valid in order to find for plaintiffs the manner in which the jury was instructed sets that to rest.

If the jury understood the dispute and followed the instructions, as we must presume they did, they could not have found for plaintiffs without finding against defendant on her counterclaim. Point one is denied.

■ The second point states that the trial court erred in giving plaintiffs' instruction defining "open and notorious" rather than an instruction tendered by defendant defining "open and notorious possession". This point is premised on the contention that defendant's proposed instruction was correct and should have been given rather than plaintiffs' definition instruction. Defendant's proposed instruction was as follows:

"The phrase 'open and notorious possession' means possession opposed and antagonistic to the claims of all others and the claimant's occupation of the land must be shown to be conspicuous, widely recognized and commonly known."

■ This instruction, while purporting to define "open and notorious possession", also includes a definition of "hostile possession". In that respect it is erroneous. "Hostile" was defined in a separate instruction tendered by defendant and given. "Hostile possession" means possession opposed and antagonistic to the claims of all others. *Gates v. Roberts*, 350 S.W.2d 729, 732 (Mo.1961); *Teson v. Vasquez*, 561 S.W.2d 119, 127 (Mo.App.1977). See also *Miller v. Warner*, 433 S.W.2d 259, 263 (Mo.1968); *City of South Greenfield v. Ca-*

---

1. Your verdict must be for plaintiffs if you believe:

First, Bernhard Martin and Mary F. Martin, his wife, conveyed the real estate referred to in the evidence to Isaac F. Martin; and

Second, that Isaac F. Martin conveyed the real estate to Bernhard Martin and Mary F. Martin, or,

Third, Isaac F. Martin conveyed the real estate to Mary F. Martin after the death of Bernhard Martin, and

Fourth, Mary F. Martin conveyed the real estate to Mildred Martin, and

Fifth, Mildred Martin conveyed the real estate to Arthur Martin, and

Sixth, Arthur Martin conveyed the real estate to Mildred Martin, and

Seventh, Mildred Martin devised the real estate to Plaintiff, Marie Wright, by will,

Unless you believe that plaintiffs are not entitled to recover by reason of Instruction Number 6.

2. Your verdict must be for Defendant Ethel M. Martin on her claim against Plaintiffs, if you believe that for at least ten years prior to the filing of this lawsuit on April 28, 1981, Defendant Ethel M. Martin and her predecessors in title, by herself or through her tenants or agent, had and maintained the actual, open, notorious, exclusive, continuous and hostile possession under a claim of right in and to the real property mentioned in the evidence.

*gle,* 591 S.W.2d 156, 159 (Mo.App.1979). The definition in defendant's instruction was wrong and may have been confusing to the jury. It justified the trial court in refusing to give it so this point has no merit.

Apparently acknowledging that it was not properly preserved for review, defendant asserts in her third point that the trial court committed "plain error" in giving the submission instruction. The instruction is set forth in footnote 1. This contention was not specifically stated at trial or in defendant's motion for new trial, so it was not properly preserved for our review. Rule 70.03; Rule 84.13; *Romines v. Donald Maggi, Inc.,* 636 S.W.2d 130, 132 (Mo.App.1982). As we do not see how manifest injustice or miscarriage of justice did or could result from the error claimed, plain error review is not appropriate. Rule 78.08. Point three is denied.

Defendant contends in her fourth point that the trial court erred in failing to grant her motion for new trial "since the jury verdict was against the entire weight of the evidence". This court does not weigh the evidence. It is the exclusive province of the trial court to determine if a verdict is against the weight of the evidence. *Wilson v. Missouri-Kansas-Texas Railroad Company,* 595 S.W.2d 41, 46 (Mo.App.1980). This point is denied.

Defendant contends in her fifth point that the trial court erred in refusing to admit as exhibits certain pleadings of a lawsuit filed by one of plaintiffs' predecessors in title. Defendant cites no authority of any kind in support of this point, nor contends that it is one of first impression. Ordinarily, a point of error unsupported by a citation of relevant authority is deemed abandoned. *Winsor v. Continental Fabricators & Supplies, Inc.,* 641 S.W.2d 120, 124 (Mo.App.1982); *Bishop v. Bishop,* 618 S.W.2d 261, 263 (Mo.App.1981). See also Rule 84.04(d). This point is not so novel or unique that authorities would not be available and we consider it abandoned. Point seven fails for the same reason.

Defendant asserts in her remaining point, point six, that the trial court erred in dismissing Count Three of her counterclaim and in failing to grant her motion in limine "in that the trial court erroneously ruled that RSMo. Section 516.065 barred the claim by Appellant that the purported deeds in 1927 and 1929 to the farm were void and deprived Appellant of the right to submit the jury the claim in Count III." In that count defendant asserted that while she was married to him, her husband had "allegedly conveyed" the real estate but she had not joined in the deeds and the attempted conveyance was in fraud of her marital rights. She sought "to recover said real estate from Plaintiffs and to apply the same in payment of Defendant's share of the estate" of her late husband.

The argument portion of the brief does not develop the contention that the trial court erred in denying her motion in limine. However, that contention could not be sustained even if properly developed. Overruling a motion in limine cannot by itself be reversible error. *Peters v. Henshaw,* 640 S.W.2d 197, 201–202 (Mo.App. 1982).

Defendant contends that § 516.-065, RSMo 1978, does not bar her claim because the deeds purportedly signed by her husband were void and because § 516.-065 was repealed by implication by § 474.-150.2, RSMo 1978. To support her claim that the husband's attempt to convey the realty without her joinder was void, she cites *Rannells v. Gerner,* 80 Mo. 474 (1883); *Chamberlain v. Spalding,* 237 Mo. App. 1040, 170 S.W.2d 454 (1943), and *Smith v. Worsham,* 552 S.W.2d 367 (Mo. App.1977). None of those decisions support her contention.

*Rannels* states that a deed of an insane person after being placed under guardianship is void. It does not state that a failure of a spouse to join has the same effect. *Chamberlain* involves a contract involving real estate where the wife, although the record owner, did not join into it. The case does point out an inconsistency of the

rights of spouses that once existed in Missouri. It states that a "husband owning land, under general conveyance to him alone, cannot convey title in fee without his wife joining in the deed. Not so with a married woman owning real estate in her own name. A married woman can convey the fee without being joined by her husband." 170 S.W.2d at 458. It nowhere says that such a deed is void.

*Smith* involved a contract where it was contemplated that a wife would join but she refused to do so. That case was based on the principle of contract law that where it is contemplated that before a contract is valid it will be signed by all parties, it is not effective when one of the contemplated parties does not sign it.

The record does not show that the deeds by defendant's husband were not to be effective unless defendant joined. If a deed by one spouse alone was always void and prevented § 516.065 from applying then it would never have any effect. It is set out in full below.[3]

▇▇▇▇ Nor do we believe that § 474.-150.2, RSMo 1978 has repealed it by implication. Section 474.150.2 states:

"Any conveyance of real estate made by a married person at any time without the joinder or other written express assent of his spouse, made at any time, duly acknowledged, is deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse, unless the contrary is shown."

Repeals by implication are not favored and for such a result to be reached, a court must be convinced that the two statutes are so repugnant that both cannot stand and therefore the legislature necessarily intended repeal, even though they did not expressly so provide. *Kansas City Terminal Railway Company v. Industrial Commission,* 396 S.W.2d 678, 683 (Mo.1965). See also *Bullington v. State,* 459 S.W.2d 334, 339 (Mo.1970).

Section 516.065 was enacted in 1951 and § 474.150 initially in 1955. Defendant's spouse died in 1975. There is no reason why § 516.065 could not apply to a claim where a spouse did not die until after the effective date of § 474.150. Section 474.-150.2 sets forth what the nonconsenting spouse's rights presently are and § 516.065 limits the time and manner of exercising that right if the transaction involved occurred on or after January 1, 1900 and prior to January 1, 1935, even if "the right under such distributive share has not accrued by the death of the spouse making any such instrument".

The two sections can stand and exist side by side without being inconsistent. Section 516.065 limits the manner of enforcing certain claims under § 474.150.2, but is not inconsistent with their existence.

The judgment is affirmed.

All concur.

---

3. *Spouse not joining in conveyance subsequent to 1900 and prior to 1935, barred, when.*—In all cases where the holder or owner of the legal or equitable title or estate to real estate situate within this state, conveyed any such real estate or any interest therein by deed, mortgage, bond for deed, contract for sale or conveyance of real estate, or by other instrument executed on or subsequent to the first day of January, 1900, and prior to the first day of January, 1935, and the spouse failed to join therein, then such spouse so failing to join therein, or the heirs at law, personal representatives, devisees, grantees or assignees of such spouse so failing to join therein shall be barred from recovering any right, title, interest or estate in and to the lands described in such instrument so executed by the other spouse unless suit is brought therefor within two years after this section takes effect; but in case the right under such distributive share has not accrued by the death of the spouse making any such instrument, then the one not joining therein is hereby authorized to file in the office of the recorder of deeds of each county wherein such land or any part thereof is situate, a notice duly sworn to by the claimant or claimants, setting forth the claim of the affiants, together with the facts upon which such claim or claims rest, the residence of such claimants and a complete description of the land so claimed and affected thereby; and if such notice as herein provided is not filed as required by this section within two years from the date this section goes into effect, then such claim or claims shall be forever barred, and no action shall be brought in any court in this state for the recovery of such lands or any part thereof or any interest therein.